IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MELISSA BROWN                                                                                    PLAINTIFF

v.                            CASE NO. 4:16-cv-00270 SWW-JTK

CITY OF MAYFLOWER, ET AL.                                                           DEFENDANTS

## **PROPOSED FINDINGS AND RECOMMENDATIONS**

### **INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.
2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.
3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at

https://www.etsy.com/listing/580376965/liberal-snowflake-shirt-dont-be-a?ga_order=most_relevant&ga_search_type=all&ga_view_type=gallery&ga_search_query=snowflake shirt&ref=sr_gallery-2-5the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Facts and Procedural History

This matter is before the Court on the Defendants' Motions for Summary Judgment. Doc. Nos. 45, 52. On May 18, 2016, Melissa Brown filed this pro se complaint against the City of Mayflower; Mayflower Police Department; Faulkner County Sheriff's Office; Greenbrier Police Department; Damascus Police Department; Mark Alan Winchester, Individually; Jeremy Lance Hanson, Individually; Wesley Tyra, Individually; Robert Alcon, Individually; and Randy Holland, Individually. At all times relevant to Brown's claims, she states Winchester, Hanson, and Tyra were all police officers employed by the City of Mayflower; Alcon was the Chief of Police for the City of Mayflower, and Holland was the Mayor of the City of Mayflower.

The Mayflower Police Department arrested Melissa Brown on May 17, 2014, on suspicion of stealing goods meant for disaster relief victims. According to the complaint, Brown allowed Jimmy Glover to drive her 2004 Dodge Ram to pick up some personal property from his damaged home, when

Mayflower Police Officer Mark Winchester stopped and arrested Glover for diving on a suspended license. The truck, according to Defendants, had an invalid license plate. Brown's truck was impounded, and she was subsequently arrested in the presence of her eight-year-old daughter on a warrant out of Van Buren County, Arkansas.[1]

Brown asserts that she was a volunteer assisting with her local disaster relief operations at the time. She claims that, at the time of her arrest, she was handcuffed without being read her Miranda rights, and asked Officer Winchester if he was "Alan's dad,"[2] to which he did not respond. She was subsequently transported to the Mayflower Police Department, notified of her Miranda rights, and interviewed by Officer Winchester alone. At the end of the interview, Brown claims Winchester asked her about details of her relationship with his son, Alan. According to Brown, Winchester took her into custody and charged her with theft of property without any basis in law or fact and in furtherance of a personal vendetta.[3]

---

[1] Brown insists that she contacted the Greenbrier Police Department and the Damascus Police Department and neither could find or confirm a warrant. Defendants note that Officer Winchester stated in his "Incident Report" and "Case Report Form" that the warrant was "out of Greenbrier Police Department." No such warrant was found with Greenbrier, but a Failure to Appear was found in the Damascus City Court.

[2] It was later determined that Brown dated Winchester's son, Alan, but that relationship ended before the investigation and her arrest. Winchester failed to disclose the conflict of interest. Brown's daughter was released to the custody of a friend at the time of Brown's arrest.

[3] Officer Winchester was fired for his handling of Brown's case, and the charges against Brown were dropped. Winchester later filed a federal lawsuit claiming that he was wrongfully terminated against the 20th Judicial District Prosecutors Office and Cody Hiland in his individual and official capacity, Case No. 4:17-cv-00504 BRW. The Court dismissed the case for lack of jurisdiction. Officer Winchester also filed suit against the City of Mayflower and the Mayflower Police Department for wrongful termination under the whistle blower statute, claiming Chief Alcon and Mayor Holland conspired to fire him for reporting unlawful incidents within the police department. Case No. 60CV-15-609, *Mark Winchester v. City of Mayflower, et al.*, Pulaski County Circuit Court, Twelfth Division.

Brown filed a federal complaint on May 18, 2016, and an amended complaint on July 1, 2016. In it, Brown alleges: (1) defendants subjected her to unreasonable search and seizure in violation of the Fourth Amendment; (2) defendants' policies and intentional conduct deprived her of her right to equal protection of the laws in violation of the Fourteenth Amendment; (3) defendant Winchester's conduct constituted malicious prosecution; and (4) she suffered economic damage and emotional distress due to the intentional, reckless, and/or negligent acts of defendant Winchester who carried out a personal vendetta against her without sufficient facts based in law or fact.

The District Court set this matter for a jury trial on January 29, 2018. Defendants Jeremy Lance Hanson, Greenbrier Police Department, Damascus Police Department, Mayflower Police Department, and Faulkner County Sheriff's Office were previously dismissed. On September 12, 2017, Defendants Alcon, Holland, Tyra, and City of Mayflower filed their Motion for Summary Judgment. Doc. No. 45. On October 10, 2017, remaining defendant Winchester also filed a Motion for Summary Judgment. Doc. No. 52.

## II.     Summary Judgment Motions

### A.     Motion of City of Mayflower, Wesley Tyra[4], Chief Robert Alcon, Mayor Randy Holland[5]

Counsel for these Defendants claim that there is no evidence that any of them were responsible for alleged violation of Brown's constitutional rights, and that their mere association with Officer Mark

---

[4]Brown's complaint seems to suggest that Officer Tyra was with the City of Mayflower; however, Defendants' Summary Judgment Motion indicates Officer Tyra is with the City of Damascus.

[5]Included in the Motion is a response on behalf of the City of Damascus. However, the undersigned does not find that the City of Damascus is named as a party in Plaintiff's Complaint or Amended Complaint. It is only after the City of Damascus was mentioned in the summary judgment motion, Doc. No. 45, did Brown respond and make claims against the City of Damascus.

Winchester does not attach liability to them. For purposes of their motion, Defendants concede that a violation occurred, but claim that (1) Brown does not, in her complaint or in her deposition, make any claim of wrongdoing against Officer Wesley Tyra or the City of Damascus; (2) Brown makes no substantive claim against Chief Alcon or Mayor Holland; neither was involved in her arrest, and nothing establishes that either had any direct responsibility for the alleged violations caused by Officer Winchester; (3) Brown fails to establish any practice of deliberate indifference or tacit authorization for Winchester's conduct; and (4) the City of Mayflower cannot be held liable for Brown's Fourth Amendment claims unless it caused the alleged injury and she has failed to establish that the city had a policy, practice, or custom that support the alleged constitutional violations.

Further, Defendants argue Brown has failed to state a First Amendment claim, and even if such a claim existed, she has offered nothing to establish liability against these separate Defendants.[6]

Finally, Defendants assert that Brown's Fourteenth Amendment claim fails as the Fourth

---

[6]The undersigned granted Brown fourteen (14) days to amend her complaint to allow her to present a first amendment claim for which relief could be granted. In her Amended Complaint, Brown did not allege a First Amendment deprivation. Therefore, the undersigned finds no reason to address this claim further, as it was abandoned. Even if the Court were to find that the argument was not abandoned, it would still fail.

Brown asserts that Officer Winchester made statements to local news media outlets asserting that the Mayflower Police Department was still investigating whether there were accomplices. According to Brown, such a statement would chill any reasonable person's speech for fear of prosecution who might otherwise come forward to vouch for her innocence. She also claims her right to free assembly was violated and she was defamed with release of investigation details to the news media, preventing her from resuming operations of her informal volunteer group.

Brown cannot personally bring an action for alleged violations of another person's rights, *see Hoyland v. McMenomy*, 2017 WL 3687436, at *6 (8th Cir. Aug. 28, 2017) (to establish a First Amendment claim, plaintiff must show in part that she engaged in protected activity and the government official took adverse action against her that would chill a person of ordinary firmness from continuing the activity), and she has failed to show she has a due process claim for the publication of information related to her arrest, *see Paul v. Davis*, 424 U.S. 693 (1976) (holding that injury to reputation is neither a liberty nor property interest guaranteed against state deprivation without due process).

Amendment is the right allegedly denied the Plaintiff. Because pretrial deprivations of liberty were contemplated by the Fourth Amendment, Defendants claim it, and not the Fourteenth Amendment, is the proper avenue under which Brown's suit should be addressed.

**B. Motion of Mark Alan Winchester**

Counsel for Officer Winchester filed his separate Motion for Summary Judgment on October 10, 2017. In it, Officer Winchester asserts that he is entitled to qualified immunity from individual liability because he had probable cause to arrest Brown, and therefore, he is entitled to summary judgment. He avers further that, even if he engaged in constitutionally impermissible conduct when he arrested Brown absent probable cause, he did so based upon information provided to him during the theft investigation and that it was reasonable for him to rely upon that information to form probable cause for the arrest.

**III.   D**iscussion

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Dulany v. Carnahan*, 132 F.3d 1234, 1237 (8th Cir. 1997). A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The basic inquiry for purposes of summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376 (8th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 256). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together

6

with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Webb v. Lawrence County*, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Id.*

### A. Claims against the City of Damascus

Brown states the City of Damascus may not have been directly responsible for her arrest but that their failure to comply with Arkansas Crime Information Center (ACIC) system regulations contributed to the circumstances that lead to her arrest and subsequent defamation. She states she contacted the Damascus Police Department numerous times prior to her arrest to determine whether there was an active outstanding warrant for her arrest and was told no. She claims the Damascus Police Department, based on their inability to validate the ACIC warrant, should have taken appropriate steps to remove the warrant from the system. She asserts the City of Damascus showed negligence in allowing its department to abuse its power and maintained a pattern of misconduct and dereliction of duties as an ACIC user, and thus, should be liable for their role in the violation of her constitutional rights.

While the City of Damascus filed a Summary Judgment Motion, there is no indication to the undersigned that it was ever named in Brown's Complaint or Amended Complaint. Therefore, summary judgment is inappropriate because they are not even a party to this lawsuit. *See e.g., Bison State Bank v. Wilson*, 298 F. 746 (8th Cir. 1924) (person not made a party to suit and with no notice of it is not bound by the suit decree).

### B. Claims against Officer Wesley Tyra

As pointed out previously, it is not clear whether Officer Tyra is an employee of the Damascus Police Department or the Mayflower Police Department. In any event, he was sued in his official and individual capacities. "Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). Suit against a public employee in his official capacity is merely a suit against the public employer. *Id.* Qualified immunity protects governmental officials from liability for civil damages when they are performing discretionary functions and their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1983). "[T]o withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right." *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.), *cert. denied*, 519 U.S. 1011 (1996). Our initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. *Scott v. Harris*, 550 U.S. 372, 377 (2007).

In support of his motion for summary judgment, Officer Tyra claims to have attached Brown's deposition testimony wherein which it is said that she acknowledges she does not know if Officer Tyra did anything wrong. Doc. No. 46, at p. 4. However, Officer Tyra did not appropriately attach any such proof. Therefore, he did not meet his burden of identifying evidence to demonstrate the absence of a genuine issue of material fact on the alleged constitutional violations. Nevertheless, Brown has failed to raise a genuine issue of fact as to whether Officer Tyra's alleged conduct violated a clearly established constitutional right.

Brown states Oficer Tyra was a participant in Officer Winchester's unlawful detention and was present when she established the conflict of interest in Officer Winchester handling her case. According to Brown, any reasonable person would have clarified the conflict and Officer Tyra should have asked Winchester to recuse himself so that he was no longer in a position to harm her. She claims Officer Tyra's negligence in not asking Winchester to recuse himself resulted in Winchester's ability to maintain absolute control over the investigation. She further claims Officer Tyra should have required Officer Winchester to properly Mirandize her before questioning, and that his failure to do so, violated her right to due process, and her Fifth and Sixth Amendment rights. It is her position that either there were no policies in place to prevent Officer Tyra's conduct or that there were policies in place and he had not been properly trained in the matter or was simply negligent in his duties.

Brown's negligence allegation against Officer Tyra lacks merit. Mere negligence is insufficient to establish culpability under section 1983. *Smith v. Busby*, 172 Fed. App'x 123 (8th Cir. 2006). Further, to the extent Brown is trying to establish supervisory individual liability of Officer Tyra under section 1983, she likewise fails because she has not shown that Officer Tyra had any type of supervisory authority over Officer Winchester.

### C. Claims against Police Chief Alcon and Mayor Holland

Brown argues that Chief Alcon is responsible for the proper training of his officers and for implementing polices that ensure his department does not deprive citizens of their constitutional rights. Brown states Chief Alcon is responsible because he either authorized disclosure of Freedom of Information Act material, did not have proper policies in place to prevent unauthorized disclosure, or failed to discipline Officer Winchester after he violated her privacy rights. Further, she claims Chief Alcon violated the Privacy Act when he failed to maintain her arrest and investigation records in a secure place to prevent them from theft or reproduction from unauthorized individuals. She asserts he

9

further violated the Privacy Act when he failed to produce records created by his agency that she was entitled to access.

Brown takes issue with Chief Alcon's assertion that he was without the knowledge or experience necessary at the time of her arrest, given that he had served on the Mayflower Police Department prior to his tenure as Chief, and served as interim Chief when the current chief, Richard Shaw, was under investigation for professional misconduct. She states Alcon's interviews with media indicate that he was aware of issues within his department when he took the job as Chief of Police. Brown claims Chief Alcon was negligent in his duty to ensure she was afforded due process. Brown notes, that after Officer Winchester was fired, a recording surfaced in which Chief Alcon was heard telling Officer Winchester after his disciplinary hearing that he believed Winchester "conducted the investigation properly and that the Plaintiff was guilty." Doc. No. 58 at p. 7. Brown states this statement infers that Chief Alcon approved of the violation of her constitutional rights and had no plans to hold Officer Winchester accountable for his conduct.

As to Mayor Randy Holland, Brown argues that he has hired multiple police chiefs and officers who left the department under less than honorable conditions. She lists a litany of officers and their alleged misconduct that have nothing to do with this case, but she avers that Mayor Holland has shown from these practices an ongoing pattern of appointing and hiring employees who are "unwilling to hold themselves or their subordinates to legal, ethical, or moral standards." *Id.* at p. 10.

A supervisor may not be held liable for a section 1983 violation on the basis of respondeat superior. *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978). There are circumstances, however, that render a supervisor liable under section 1983 for the unconstitutional conduct of his subordinates. A supervisor may be held liable if he directly participated in the constitutional violation*, see Webster v. Gibson*, 913 F.2d 510, 514 (8th Cir. 1990), or if he failed or refused to intervene when a constitutional

violation took place in his or her presence. *Putnam v. Gerloff*, 639 F.2d 415, 423 (8th Cir. 1981). A supervisor will also be held liable if his failure to train or supervise the offending actor caused the deprivation. *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 806 (8th Cir. 1994). "The standard of liability for failure to train police officers is deliberate indifference." *Id.* at 807 (citations omitted). "The standard of liability for failure to supervise is 'demonstrated deliberate indifference or tacit authorization of the offensive acts.'" *Id.* (citations omitted) Finally, a supervisory official may be liable if he created a policy or custom under which the unconstitutional practice occurred. *Moyle v. Anderson*, 571 F.3d 814, 817-818.

Here, the Court has attempted to parse through Brown's allegations and voluminous exhibits to find a genuine issue of material fact. There is no evidence that Chief Alcon was personally involved with or tacitly authorized the conduct of any employee that would render him liable. *See Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996) (a supervisor "may be held liable under § 1983 ... if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation."). Further, to the extent Plaintiff asserts failure to train, Plaintiff has not shown training so lacking as to constitute deliberate indifference. *See Andrews v. Fowler*, 98 F.3d at 1078 (three requirements must be met for a failure to train claim: first, the training practices must be inadequate; second, there must be deliberate indifference to the rights of others in adopting the training practices such that the failure to train reflects a deliberate or conscious choice; and third, the alleged deficiency in the training procedures must actually cause injury). Any knowledge, if any, of alleged impermissible activity prior to his taking the helm as police chief does not attach supervisor liability to the police chief. Likewise, any investigations into the

actions of city officers and employees in this particular instance does not evidence deliberate indifference.

In review of Brown's lengthy responses to the summary judgment motions that include both relevant and irrelevant information, the Court also attempted to discern any actions taken by the mayor. Brown takes issues with the mayor's hiring choices and alleged misconduct of those under his leadership. She has failed to set forth any specific factual allegations showing what Mayor Holland allegedly did, or failed to do, that allegedly violated her federal constitutional rights, and as noted previously, his position as mayor does not in itself lend itself to suit under the respondeat superior theory of liability. Thus, individual liability cannot be attributed to Mayor Holland under section 1983 for the officers' actions.

### D. Claims against the City of Mayflower

Brown takes the position that the City of Mayflower either authorized Officer Winchester to violate her rights or lacked policies outlining proper procedures to prevent Officer Winchester from violating her rights, and was negligent in protecting her against these violations. She claims the city has a history of failing to ensure that its officers are properly trained and in failing to maintain public records in accordance with the law, and as a result, should be held accountable.

A municipality cannot be held vicariously liable for the unconstitutional acts of employees. *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 692-693 (1978). Liability will not attach simply because the municipality employs an alleged tort-feasor. *Id.* at 692. It may be held liable, however, for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom. *See id.* at 694. For a municipality to be liable, a plaintiff must prove that a municipal policy or custom was the "moving force [behind] the

constitutional violation." *Monell,* 436 U.S. at 694; *see also Board of Comm'rs v. Brown,* 520 U.S. 397, 400(1997) (holding that only "deliberate" action by a municipality can meet the "moving force" requirement). Furthermore, the terms "policy" and "custom" are not interchangeable when conducting a *Monell* analysis. *Mettler v. Whitledge* 165 F.3d 1197, 1204 (8th Cir.1999). Rather, a "policy" is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters. *Id.*

The City of Mayflower may be subject to § 1983 liability only if it had a "policy or custom" of failing to act upon prior similar complaints of unconstitutional conduct, which caused the constitutional injury at issue. *Andrews v. Fowler,* 98 F.3d 1069, 1074–1075 (8th Cir.1996). There must exist a prior pattern of unconstitutional conduct that is so "persistent and widespread" as to have the effect and force of law. *Id.* at 1075. "To establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action." *Id.*

Although Brown offers examples of various complaints against the City of Mayflower and its officers, she does not offer evidence of complaints by other citizens against city officers, or unconstitutional acts directed at other citizens that would give rise to an inference of a pattern. Nor has she offered evidence that it is the policy or custom of the City of Mayflower to inadequately train and supervise its employees. As previously noted, to be actionable under section 1983, the city's failure to train must amount to deliberate indifference to the rights of the citizens of Mayflower. Therefore, Brown has failed to establish a genuine issue of material fact as to the existence of a policy or custom resulting in constitutional violations by the city under section 1983. Furthermore, the city cannot be held liable unless one of its employees is found liable for an underlying substantive claim. *See Abbott v. City of Crocker*, 30 F.3d 994, 998 (8th Cir. 1994).

### E. Fourteenth Amendment Claim

Brown stands by her assertion that she was denied due process when Officer Winchester impounded her car with no probable cause, failed to read her Miranda rights prior to questioning, and violated her privacy rights by disclosing details of an ongoing investigation to local news outlets. In support of her Fourteenth Amendment claim, Brown relies on cases that outline that the arrest of a private citizen who is accused of criminal activity results in loss within the meaning of the Fourteenth Amendment because of notions implicit in the criminal justice system. She takes the position that dissemination of inaccurate criminal information without precaution of reasonable efforts to forestall inaccuracy restricted her liberty without any procedural safeguards designed to prevent such inaccuracies and resulted in Fourteenth Amendment violations.

The undersigned agrees with Defendants that pretrial deprivations of liberty are more appropriately dealt with under the Fourth Amendment and not the more substantive due process argument found in the Fourteenth Amendment. *Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'") (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Even if the arguments were appropriate under the Fourteenth Amendment, for the reasons outlined in the discussion below, Brown has failed to show that a genuine issue of material fact remains.

### F. Claims against Officer Mark Winchester

On November 29, 2017, Separate Defendant Mark Winchester argued he is entitled to summary judgment because Brown failed to respond to his motion. Doc. No. 62. In her attempt to respond to

14

Winchester's Motion, Brown filed a Brief in Opposition, Doc. No. 63, the following day. In it, Brown attempts to point out inconsistencies in the testimony and evidence but it all relates primarily to Police Chief Alcon, Mayor Holland, and the City of Mayflower.

Failure to respond to a summary judgment motion does not automatically compel resolution in favor of the moving party. *United States v. One Parcel of Real Property, Located at 9638 Chicago Heights, St. Louis, Mo.,* 27 F.3d 327, 327 n.1 (8th Cir. 1994). The court must still determine whether summary judgment is appropriate. *See id.*

At the time of Glover's arrest, Officer Winchester determined that the truck belonged to Brown and the tags did not belong on the truck. A history check of Brown also showed she had a warrant out of Greenbrier. According to the report, when Officer Winchester inquired of Brown, she told him the warrant had been taken care of, but records indicated to Officer Winchester that it was still outstanding. It was only after Glover's arrest that the theft of property investigation began and Officer Winchester arranged for a relief worker to meet with Brown. It was at the arranged meeting that Officer Winchester and Officer Tyra arrested Brown on the warrant, which was confirmed. Doc. No. 47-2, at pp. 3, 10.

Although Brown, represented that the warrant was no longer valid—which appears to be true—the officers at the time were not aware of that. They received information that the arrest warrant continued to be outstanding. They arrested her based upon information of the existence of a valid warrant, and this action was reasonable. "An arrest executed pursuant to a facially valid warrant generally does not give rise to a cause of action under 42 U.S.C. § 1983 against the arresting officer." *Fair v. Fulbright*, 844 F.2d 567, 569 (8th Cir. 1988); *see also Young v. City of Little Rock*, 249 F.3d 730, 734 (8 th Cir. 2001); *Moiser v. Blum*, 875 F.2d 202, 204 (8th Cir. 1989).

Even if the warrant was not actually valid, as Brown attests, officers who arrested her would be

15

entitled to qualified immunity because she does not allege any facts from which an inference can be drawn that reasonable police officers in the City of Mayflower police officers' position would have known that her arrest was illegal despite the existence of warrant. *Stigall v. Madden*, 26 F.3d 867, 869 (8th Cir. 1994). *Edwards v. Baer*, 863 F.2d 606, 607-608 (8th Cir. 1988). Whether out of Greenbrier or Damascus, there was a warrant for Brown's arrest.

Officer Winchester was subsequently fired from the Mayflower Police Department—not because of his arrest of Brown or any conflict of interest related to her allegedly dating his son—but because the prosecuting attorney for the 20th Judicial District, Cody Hiland, informed Chief Alcon that his office would no longer accept felony case submissions from Officer Winchester because it was determined that he withheld exculpatory evidence from their office during his theft-of-property investigation.[7]" Doc. No. 58, at pp. 46, 55. While Winchester's investigation was not comprehensive, Brown has not alleged sufficient facts to show a constitutional violation.

Brown's malicious prosecution claim under section 1983 also fails. While it was regrettable that Brown's right to be free of criminal charges received vindication later, rather than sooner, it happens to be a fact of life that sometimes people are charged with crimes for which they are later acquitted or charges are never brought. The Eighth Circuit has determined that an allegation of malicious prosecution by itself does not constitute a constitutional injury sufficient to support a § 1983 claim because the "Constitution does not guarantee that criminal charges will be filed only against the guilty. Rather, the Constitution mandates procedures designed to protect defendants." *Gunderson v. Schlueter*,

---

[7]The exculpatory evidence, according to Winchester, was his withholding of information that he had asked a Cabot law enforcement officer to look through Brown's window for canned goods in order to decide if there was a need for a search warrant. When the officer arrived, the window was covered. Brown noted that he should have put it in the case file but he did not think it was necessary at the time. Doc. No. 58, at pp. 58-60.

904 F.2d 407, 409 (8th Cir. 1990); *see also Olinger v. Larson*, 134 F.3d 1362, 1366 (8th Cir. 1998) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)).

### G.  Pendent State Claims

To the extent that Brown's economic and emotional distress, and malicious prosecution claims are deemed to be pendent state claims, the undersigned would decline to retain jurisdiction over them.

### IV.  Conclusion

For the reasons stated above, the undersigned recommends that the summary judgment motions be granted as against all remaining parties.

IT IS SO ORDERED this 11th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE